UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

SOPHIE THAI,

        **Plaintiff,**

      - against -

CAYRE GROUP, LTD., CGMT LLC,
ACA WORLD TRADE LLC, ROBERT D.
CAYRE, JONATHAN BOON, and
JAMES OLIVERI,

        **Defendants.**

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/8/10

**OPINION AND ORDER**

**10 Civ. 269 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Sophie Thai filed this action against Cayre Group, Ltd. (the "Cayre

Group"), CGMGT LLC, ACA World Trade LLC, Robert D. Cayre, Jonathan

Boon, and James Oliveri (collectively "Defendants"), alleging that they

discriminated against her on the basis of her age and gender in violation of the

New York City Human Rights Law ("NYCHRL").[1]  Thai also asserts claims based

upon the Fair Labor Standards Act ("FLSA") and New York Labor Law

---

[1]     Administrative Code of City of N.Y. § 8-130.

-1-

("NYLL") with regard to overtime pay for hours worked in excess of forty hours

per week, as well as claims for defamation, defamation per se, retaliation, and

intentional infliction of emotional distress ("IIED") under state and local law.[2]

Defendants move for partial dismissal of Plaintiff's First Amended Complaint (the

"FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.   BACKGROUND

Thai is a 49-year old Asian woman.[3]  From January 2003 to

December 2009, she worked as a bookkeeper and letter of credit processor at ACA

World Trade LLC (the "Company"), a unit of the Cayre Group and CGMGT

LLC.[4]  Thai alleges that Defendants discriminated against her based upon her age

and gender, retaliated against her when she complained of this discrimination, and

defamed her during the course of her employment and upon firing her.[5]

---

[2]     This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her remaining claims pursuant to 28 U.S.C. § 1367 because the claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1996). "[J]udicial economy, convenience and fairness to litigants" counsel in favor of allowing Thai to plead her federal, state, and local claims together in federal court. *Id.*

[3]     *See* FAC ¶ 11.

[4]     *See id.* ¶¶ 8-10.

[5]     *See id.* ¶¶ 5-7.

For the majority of her tenure, Thai worked at the Company without incident. The problems began in September 2009, when she requested a "swipe card" to access a side entrance door more convenient to her work area, which she had noticed other employees using.[6] When she did not receive a response to her request, she complained to Robert Cayre, President of the Company, that she was being discriminated against and treated differently from other employees.[7] With Cayre in the room, Thai's supervisor, Jonathan Boon, told her that she would not be given an access card for "security reasons" and that use of the side door was reserved for "Cayre family members only."[8] Thai alleges that this excuse was simply untrue: many non-family members were given access to the side entrance.[9] When she confronted Boon with this disparity, he allegedly confiscated the female employees' swipe cards, but allowed the male employees to retain their cards.[10] Thai reported the incident to Cayre, but received no relief.[11]

---

[6]     *See id.* ¶¶ 33-35.

[7]     *See id.* ¶¶ 36-37.

[8]     *Id.* ¶¶ 38-42.

[9]     *See id.* ¶ 43.

[10]    *See id.* ¶ 45.

[11]    *See id.* ¶¶ 47-48.

In late November and early December of 2009, Thai went on vacation. While she was out of the office, Boon's assistant, James Oliveri, a young Caucasian male, was given permission to modify her bookkeeping records.[12] When Thai returned, she discovered that Oliveri had "mess[ed] up" her books.[13] She asked Oliveri to correct the mistakes, but he refused.[14] Thai protested to Boon that she was being subjected to "sexual harassment," and that Oliveri would never have interfered with the work of a male employee.[15] Thai made similar complaints to Cayre in a December 8, 2009 e-mail, threatening to file suit if the "sexual harassment" – and Oliveri's interference – did not stop.[16] Immediately thereafter, she was fired.[17]

Thai asked her supervisors for an explanation of her termination.

---

[12]    *See id.* ¶¶ 49-51, 57-62.

[13]    *Id.* ¶ 67.

[14]    *See id.* ¶ 66.

[15]    *Id.* ¶ 68.  According to the FAC, when Thai complained of "sexual harassment," she meant "discrimination based on gender." *Id.*

[16]    *See id.* ¶¶ 69-70; 12/8/09 E-mail from Thai to Cayre ("Thai E-mail"), Ex. A to 3/29/10 Affidavit of Maryann Caruso, Human Resources Manager for Defendant Cayre Group, Ltd., in Support of Defendants' Motion for Partial Dismissal of Plaintiff's Complaint.

[17]    *See* FAC ¶ 71.

Boon explained that he was "upset" about her complaints of discrimination.[18]

Cayre added that Thai was not a "team player" and had been uncooperative with

Oliveri.[19]  Although Thai's termination was intended to be effective immediately,

she agreed to teach Oliveri the bookkeeping system so he could replace her.[20]

While she was waiting to instruct Oliveri, Thai was forced to leave her desk and

sit in a conference room.[21]  Thai was then informed, in front of all her former co-

workers, that she would not be allowed to take her belongings with her when she

left.[22]  The Company confiscated her personal effects, allegedly to search for

stolen items.[23]  Thai claims she was so humiliated and distressed that she had to

seek emergency medical treatment.[24]

## III.   LEGAL STANDARD AND APPLICABLE LAW

### A.   Motion to Dismiss

The Supreme Court's landmark decisions in *Bell Atlantic*

---

[18]   *Id.* ¶ 79.

[19]   *Id.* ¶¶ 81-82.

[20]   *See id.* ¶¶ 83-84.

[21]   *See id.* ¶ 89.

[22]   *See id.* ¶¶ 90-91.

[23]   *See id.* ¶ 92.

[24]   *See id.* ¶¶ 95-97.

*Corporation v. Twombly*[25] and *Ashcroft v. Iqbal*[26] shifted pleading standards from "simple notice pleading" to a "more heightened form of pleading."[27]  To survive a motion to dismiss under *Twombly* and *Iqbal*, a plaintiff's allegations must meet a standard of "plausibility."[28]  A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29]  While plausibility "is not akin to a probability requirement," plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[30]  Pleading facts that are "merely consistent with a defendant's liability"[31] is insufficient to "nudge[ ] [a plaintiff's] claims across the line from the conceivable to plausible."[32]  In

---

[25]     550 U.S. 544 (2007).

[26]     — U.S. —, 129 S. Ct. 1937 (2009).

[27]     *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[28]     *Twombly*, 550 U.S. at 564.

[29]     *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

[30]     *Id.* (quotation marks and citations omitted).

[31]     *Id.* (quotation marks and citation omitted).

[32]     *Twombly*, 550 U.S. at 570.  A "'complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002)).

deciding a motion to dismiss, the court must "accept as true all of the factual allegations contained in the complaint"[33] and "draw all reasonable inferences in the plaintiff's favor."[34] However, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[35]

## B.    Employment Discrimination

In *Swierkiewicz v. Sorema N.A.*,[36] which preceded *Twombly* and *Iqbal*, the Supreme Court rejected a heightened factual pleading requirement for employment discrimination cases.  Specifically, the Court held that a plaintiff need not allege specific facts establishing a prima facie case of discrimination to survive a motion to dismiss.[37]  Rather, "the ordinary [pre-*Twombly*] rules for assessing the sufficiency of a complaint apply."[38]

---

[33]    *Twombly*, 550 U.S. at 572.  *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[34]    *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[35]    *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks and citation omitted).

[36]    534 U.S. 506 (2002).

[37]    *See id.* at 514.

[38]    *Id.* at 511.

-7-

The *Twombly* Court held that *Swierkiewicz* remains good law.[39]

However, some courts and commentators have concluded that *Twombly* and *Iqbal*
repudiated *Swierkiewicz*, at least to the extent that *Swierkiewicz* relied upon pre-
*Twombly* pleading standards.[40] Reconciling *Swierkiewicz*, *Twombly*, and *Iqbal*, a
complaint need not establish a prima facie case of employment discrimination to
survive a motion to dismiss; however, "the claim must be facially plausible, and
must give fair notice to the defendants of the basis for the claim."[41] Although
*Swierkiewicz* refers to claims under Title VII, the same pleading standard applies

---

[39]    *See Twombly*, 550 U.S. at 569-70 ("Plaintiffs say that our analysis
runs counter to *Swierkiewicz* . . . . [H]owever, *Swierkiewicz* . . . simply re-
emphasized . . . that . . . a heightened pleading standard for Title VII cases was
contrary to the Federal Rule[s] . . . . Here, in contrast, we do not require
heightened fact pleadings of specifics . . . .") (quotation marks and citations
omitted).

[40]    *Cf. Fowler*, 578 F.3d at 211("We have to conclude, therefore, that
because *Conley* has been specifically repudiated by both *Twombly* and *Iqbal*, so
too has *Swierkiwicz*, at least insofar as it concerns pleading requirements and relies
on *Conley*." ) *with Harper v. New York City Hous. Auth.,* 673 F. Supp. 2d 174, 180
(S.D.N.Y. 2009) ("[N]othing in *Iqbal* indicates that the Supreme Court intended
that decision to affect the continued applicability of *Swierkiewicz*, and the courts
in this district have continued to apply *Swierkiewicz* in employment discrimination
claims.") (collecting cases).

[41]    *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y.
2009).

to NYCHRL discrimination claims.[42]

## C.    Defamation

"Defamation in word or print is cognizable in an action for libel."[43]

"To state a claim for defamation under New York Law, the plaintiff must allege

(1) a false statement about the plaintiff; (2) published to a third party without

authorization or privilege; (3) through fault amounting to at least negligence on

[the] part of the publisher; (4) that either constitutes defamation per se or caused

'special damages.'"[44]  A defamation claim "is only sufficient if it adequately

identifies 'the purported communication, and an indication of who made the

communication, when it was made, and to whom it was communicated.'"[45]

---

[42]     *See Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) (applying
*Swierkiewicz* to NYCHRL and NYSHRL discrimination claims).  *See also
Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009) ("[G]ender
discrimination claims brought pursuant to . . . the NYCHRL are analyzed under
the Title VII framework") (internal citations omitted); *Fowler*, 677 F. Supp. at 682
(although "employment discrimination claims under the NYCHRL are to be
reviewed independently from, and more liberally than, their federal and state
counterparts," "gender discrimination claims brought pursuant to the NYCHRL
are [to be] analyzed under the Title VII framework.").

[43]     *Rosenberg v. MetLife, Inc.*, 453 F.3d 122, 123 n.1 (2d Cir. 2006).

[44]     *Gargiulo v. Forster & Garbus, Esqs.*, 651 F. Supp. 2d 188, 192
(S.D.N.Y. 2009) (citing *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't
1999)).

[45]     *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000)
(quoting *Broome v. Biondi*, No. 96 Civ. 805, 1997 WL 83295, at *2 (S.D.N.Y.

### 1.   The "Of and Concerning" Requirement

To state a claim for defamation, the allegedly defamatory statement must be "of and concerning the plaintiff."[46]  The "of and concerning" requirement significantly limits the class of plaintiffs who may sue for communications they believe to be false, defamatory, and injurious.[47]  "'[P]laintiffs in defamation proceedings bear the burden of demonstrating that the libel designates the plaintiff in such a way as to let those who knew her understand that she was the person meant.'"[48]  "'[T]he Court properly may dismiss an action pursuant to Rule 12(b)(6) where the statements are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff.'"[49]

### 2.   The Common Interest Privilege

With regard to the second element of a defamation claim, New York recognizes a qualified common interest privilege when the allegedly defamatory

---

Feb. 10, 1997)).

[46]   *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (quotation marks and citation omitted).

[47]   *Id.* at 399-400.

[48]   *Id.* (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

[49]   *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (quoting *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1160 (S.D.N.Y.1992)).

statement is made between persons who share a common interest in the subject matter.[50]  At the pleadings stage, a plaintiff can overcome the common interest privilege by alleging that the defamatory statement was motivated solely by [common law or constitutional] malice.[51]  "Common-law malice mean[s] spite or ill will, and will defeat the privilege only if it is the one and only cause for the publication."[52]  "Constitutional or actual malice means publication with [a] high degree of awareness of [the publication's] probable falsity or while the defendant in fact entertained serious doubts as to the truth of [the] publication."[53]  "'Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege.'"[54]

### 3.    Special Damages or Defamation Per Se

---

[50]    *See El-Hennawy v. Davita, Inc.*, 853 N.Y.S.2d 925, 925 (2d Dep't 2008) (citing *Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996); *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992)).

[51]    *See Phelan v. Huntington Tri-Village Little League, Inc.*, 568 N.Y.S.2d 737, 738 (2d Dep't 2008) (citing *Liberman*, 80 N.Y.2d at 437-39).  *See also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000)).

[52]    *Konikoff*, 234 F.3d at 98 (alterations in original) (citations and quotation marks omitted).

[53]    *Id.* at 99 (alterations in original) (quotation marks omitted).

[54]    *Golden v. Stiso*, 720 N.Y.S.2d 164, 164 (2d Dep't 2001) (quoting *Kamerman v. Kolt*, 621 N.Y.S.2d 97, 97 (2d Dep't 1994)).

To state a claim for defamation, a plaintiff must also allege either special damages or defamation per se. "Special damages consist of 'the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation[.]'"[55] Special damages "must be fully and accurately stated, with sufficient particularity to identify actual losses."[56] "[R]ound figures or a general allegation of a dollar amount . . . will not suffice."[57] The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity.[58]

Under New York law, statements that are defamatory per se are actionable without "'pleading and proof of special damages.'"[59] "The line between statements that are defamatory per se and those that require proof of

---

[55]     *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000) (quoting *Matherson v. Marchello*, 473 N.Y.S.2d 998, 1000 (2d Dep't 1984)).

[56]     *Id.* (quotation marks and citations omitted).

[57]     *Nunez v. A-T Fin. Info., Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997).

[58]     *See, e.g., Emergency Enclosures, Inc. v. National Fire Adjustment Co., Inc.*, N.Y.S.2d 414, 417 (4th Dep't 2009); *L.W.C. Agency v. St. Paul Fire & Mar. Ins. Co.*, 509 N.Y.S.2d 97, 100 (2d Dep't 1986).

[59]     *Celle,* 209 F.3d at 179 (quoting *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985)).

-12-

special damages remains fuzzy."[60]  As a general rule, a statement that "tend[s] to

injure the plaintiff in his or her trade, business or profession" is defamatory per se

and does not require proof of special damages to be actionable.[61]  Also, "'[w]here

a statement impugns the basic integrity or creditworthiness of a business, an action

for defamation lies and injury is conclusively presumed.'"[62]

### D.    Intentional Infliction of Emotional Distress

"Under New York law, a claim of intentional infliction of emotional

distress requires: '(1) extreme and outrageous conduct; (2) intent to cause, or

reckless disregard of a substantial probability of causing, severe emotional

distress; (3) a causal connection between the conduct and the injury; and (4)

severe emotional distress.'"[63]  Whether the alleged conduct is sufficiently

---

[60]    *Id.*

[61]    *Albert v. Loksen,* 239 F.3d 256, 271 (2d Cir. 2001).  *Accord Allen v.
CH Energy Group, Inc.*, 872 N.Y.S.2d 237, 238 (3d Dep't 2009) ("While the
general rule provides that a defamatory statement is not actionable absent a
showing of special damages, one of the recognized exceptions to such rule is when
the statement imputes incompetence, incapacity or unfitness in the performance of
one's profession or trade." (quotation marks and citations omitted)).

[62]    *Celle,* 209 F.3d at 180 (quoting *Ruder & Finn Inc. v. Seaboard Surety
Co.*, 52 N.Y.2d 663, 670 (1981)).

[63]    *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting
*Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).

outrageous to satisfy the first element is a matter of law for the courts to decide.[64]

"[T]he standard for stating a valid claim of intentional infliction of emotional

distress is 'rigorous, and difficult to satisfy.'"[65]  "The conduct must be 'so

outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized society.'"[66]  "Courts are reluctant to allow recovery under the banner of

intentional infliction of emotional distress absent a deliberate and malicious

campaign of harassment or intimidation."[67]

### E.    Retaliation

Until recently, employment discrimination claims brought under the

NYCHRL were analyzed under the same framework that applies to Title VII and

---

[64]    *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 324
(S.D.N.Y. 2008) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121
(1993)).

[65]    *Conboy*, 241 F.3d at 258 (quoting *Howell*, 81 N.Y.2d at 122).  *Accord
Howell,* 81 N.Y.2d at 122 ("[O]f the intentional infliction of emotional distress
claims considered by this Court, every one has failed because the alleged conduct
was not sufficiently outrageous.").

[66]    *Id.* (quoting *Stuto*, 164 F.3d at 828).

[67]    *Cohn-Frankel v. United Synagogue of Conservative Judaism*, 667
N.Y.S.2d 360, 362 (1st Dep't 1998).

Age Discrimination in Employment Act ("ADEA") claims.[68]  In *Williams v. New*

*York City Housing Authority*, the First Department held that, pursuant to the 2005

amendments to the NYCHRL,[69] "the City HRL's provisions [are] to be construed

more broadly than federal civil rights laws and the State HRL."[70]  Accordingly,

"analysis [of the NYCHRL provisions] must be targeted to understanding and

fulfilling what the statute characterizes as the City HRL's 'uniquely broad and

remedial' purposes, which go beyond those of counterpart State or federal civil

rights laws."[71]  The Second Circuit has since ratified this broad construction of the

NYCHRL.[72]

The NYCHRL prohibits retaliation against an employee who has

---

[68]     *See Leibowitz*, 584 F.3d at 498 n.1 (age discrimination claims
brought under New York law are analyzed under the ADEA framework); *Brennan
v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 317 n.2 (2d Cir. 1999)
("Employment discrimination claims brought under the NYSHRL are analyzed
identically to claims under the ADEA and Title VII.").

[69]     Local Law No. 85 of the City of New York (the Restoration Act of
2005).

[70]     872 N.Y.S.2d 27, 36-37 (1st Dep't 2009) (noting that in revising the
construction provision of Administrative Code § 8-130 "the Council formally and
unequivocally rejected the assumption that the City HRL's purposes were identical
to that of counterpart [federal and state] civil rights statutes.").

[71]     *Id.* at 31 (quoting Local Law No. 85 § 7).

[72]     *See Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010); *Loeffler v.
Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

protested against workplace discrimination.[73] To state a valid claim for retaliation, "a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action."[74]

To be actionable under the NYCHRL, the retaliatory "acts complained of must be reasonably likely to deter a person from engaging in protected activity," but the employee need not suffer "a materially adverse change in the terms and conditions of employment."[75] Although similar to the anti-retaliation standard under Title VII,[76] New York courts have emphasized that the

---

[73]    N.Y. Admin. Code. § 8-107(7).

[74]    *Patane*, 508 F.3d at 115 (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)). The elements of a retaliation claim are the same regardless of whether it arises under federal, state or local law. *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312-13 (2004).

[75]    N.Y. Admin. Code. § 8-107(7).

[76]    *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (internal quotation marks and citations omitted)).

-16-

standard under the NYCHRL is broader.[77]  The *Williams* court explained that "the

City Council was determined, via the Restoration Act of 2005 to 'make clear that

the standard to be applied to retaliation claims under the City's human rights law

differs from the standard currently applied by the Second Circuit in [Title VII]

retaliation claims.'"[78]  Under the NYCHRL, assessment of retaliation claims must

"be made with a keen sense of workplace realities, of the fact that the 'chilling

effect' of particular conduct is context-dependent, and of the fact that a jury is

generally best suited to evaluate the impact of retaliatory conduct in light of those

realities."[79]  "Accordingly, the language of the City HRL does not permit any type

of challenged conduct to be categorically rejected as nonactionable."[80]

---

[77]      *See Williams*, 872 N.Y.S.2d at 34 n.12 ("While this was a standard
similar to that set forth in § 8-107(7), it cannot be assumed that cases citing
*Burlington* adequately convey the full import of the City HRL standard, especially
because the confusing use of the term 'materially adverse' might lead some courts
to screen out some types of conduct prior to conducting 'reasonably likely to
deter' analysis.  In fact, to reiterate, § 8-107(7) specifically rejects a materiality
requirement.").

[78]      *Id.* at 33 (quoting Report of Committee on General Welfare, 2005
N.Y. City Legis. Ann. at 536).

[79]      *Id.* at 34.

[80]      *Id.* ("On the contrary, no challenged conduct may be deemed
nonretaliatory before a determination that a jury could not reasonably conclude
from the evidence that such conduct was, in the words of the statute, 'reasonably
likely to deter a person from engaging in protected activity.'" (quoting N.Y.
Admin. Code § 8-107(7))).

-17-

## F.   Amendments to Pleadings

"Rule 15(a) provides that, other than amendments as a matter of course, 'a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'"[81]  "[W]hether to permit a plaintiff to amend its pleadings is a matter committed to the Court's sound discretion."[82]  According to the Supreme Court

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."[83]

Therefore, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'"[84]

---

[81]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).

[82]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quotation marks and citation omitted).

[83]     *Foman v. Davis*, 371 U.S. 178, 182 (1962).  *Accord, e.g., Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

[84]     *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).  *Accord Hayden v. County of Nassau*, 180 F.3d 42, 53

-18-

## IV.   DISCUSSION

### A.   Thai's Employment Discrimination Claims Cannot Be Partially Dismissed

Thai alleges age and gender discrimination under the NYCHRL based upon, *inter alia*, Defendants' (1) denying her a swipe card; (2) confiscating the swipe cards of other female employees but allowing male employees to keep their swipe cards; (3) instructing Oliveri – a  younger male employee – to harass her in the workplace; (4) secretly training Oliveri to take over her duties; and (5) terminating her in order to replace her with Oliveri.[85]  Defendants move to dismiss Thai's discrimination claims "[t]o the extent [they] are based on disparate treatment in the issuance of a swipe card" because "these claims do not allege that Plaintiff suffered a materially adverse employment action."[86]

Defendants' motion fails on two scores.  *First*, Defendants fail to cite – and I cannot find – any authority under federal or New York law to support the proposition that a *claim* may be dismissed in part.  Thai's gender and age discrimination claims are not based on the swipe card incident in isolation, but

_____

(2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.").

[85]     *See* FAC ¶¶ 46, 56, 75, 109-110.

[86]     Defendants' Memorandum of Law in Support of Their Motion for Partial Dismissal of Plaintiff's Complaint ("Def. Mem.") at 14.

upon disparate treatment in the workplace (of which the swipe card incident forms

one part) and the circumstances surrounding her firing.  Defendants have no basis

for dismissing a factual element of Plaintiff's prayer for relief.

Second, Defendants misconstrue Thai's allegations.  She does not

claim that the denial of the swipe card itself was an adverse employment action.

She merely contends that the swipe card incident supports an inference of

discrimination.  Defendants erroneously disregard Thai's other claims – namely,

that the Company instructed Oliveri to interfere with her bookkeeping

responsibilities, and then fired her so Oliveri, a younger male employee, could

replace her.[87]  Taken together, these allegations make it plausible that Thai

"experienced a materially adverse change in the conditions of her employment

because of her sex."[88]  She does not need to plead facts establishing a prima facie

case of discrimination to survive a motion to dismiss.[89]  Because Thai's

---

[87]     See FAC ¶¶ 46, 56, 75, 109-110.

[88]     Fowler, 677 F. Supp. 2d at 682-83 (noting that a "materially adverse
change might be indicated by a termination of employment, a demotion evidenced
by a decrease in wage or salary, a less distinguished title, a material loss of
benefits, significantly diminished material responsibilities, or other indices . . .
unique to a particular situation." (quoting Galabya v. New York City Bd. of Educ.,
202 F.3d 636, 640 (2d Cir. 2000))).  Thai's complaint, therefore, is more than
sufficient to meet the NYCHRL standard for an adverse employment action, which
is set lower than "materially adverse."  See Williams, 872 N.Y.S.2d at 34 n.12.

[89]     See Fowler, 677 F. Supp. 2d at 679.

discrimination claims, taken as a whole, are "facially plausible" and "give fair

notice to the defendants of the basis for the claim[s]," dismissal under Rule

12(b)(6) is not warranted.[90]   Accordingly, Defendants' motion to dismiss is denied

with respect to Claims Three and Ten.

**B.**   **Thai Fails to State a Claim for Defamation or Defamation Per Se**

Thai claims that Defendants defamed her when they denied her a

swipe card, citing "security reasons."[91]   Specifically, Thai alleges that Boon's

statement created the impression she could not be trusted, thereby impugning her

reputation for honesty and integrity, and harming her professional reputation as a

bookkeeper.[92]

**1.**   **Boon's Statement Was Not "Of and Concerning" Thai**

Even assuming that Boon's statement was false, was published to

third parties with the required level of fault, and injured Thai in her trade,

business, or profession – which would be a stretch here – Thai fails to state a claim

for defamation because the statement complained of did not target her as an

---

[90]   *Id.*

[91]   FAC ¶ 120.

[92]   *See id.* ¶ 127.

individual.[93]  Boon stated that Thai would not be given a swipe card for "security

reasons" – this is not the equivalent of calling her a "security risk."[94]  Boon's

statement merely provided the Company's reason for maintaining a secure

entrance and denying access to some employees; it does not single Thai out in any

way.[95]  Considering the statement in context, a reasonable listener would not take

Boon's words as impugning Thai or her integrity personally.[96]  The inference Thai

asks this Court to draw – that Boon purposefully, and with knowledge of the

statement's falsity, created the impression that she was a thief who could not be

trusted – is simply not plausible.  Accordingly, Plaintiff's allegations of

defamation cannot survive a motion to dismiss.

> ## 2.   Boon's Statement Is Protected by the Common Interest

---

[93]   *See, e.g., Moccio v. Cornell Univ.*, No. 09 Civ. 3601, 2009 WL 2176626, at \*4 (S.D.N.Y. July 21, 2009) (dismissing a defamation claim on the ground that no reasonable jury could conclude that the allegedly defamatory statement referred to the plaintiff).

[94]   *See* FAC ¶¶ 120, 127.

[95]   *See Abramson v. Pataki*, 278 F.3d 93, 102 (2d Cir. 2002) ("[A]n individual plaintiff must be clearly identifiable to support a claim for defamation." (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 288-89 (1964))).

[96] *Allen*, 872 N.Y.S.2d at 238 ("The alleged defamatory words should be considered 'in the context of the entire statement or publication as a whole, tested against the understanding of the average [listener].'" (quoting *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985); *Vacca v. General Elec. Credit Corp.*, 451 N.Y.S.2d 869, 870 (3d Dep't 1982))).

### Privilege

Even if Boon's statement were "of and concerning" Thai, her defamation claim would still fail because the allegedly defamatory statement falls within the common interest privilege. Thai alleges that Boon, her supervisor, published the statement regarding the swipe card to Cayre, the President of the Company.[97] This communication is protected by the common interest privilege because as Thai's employers, Boon and Cayre shared an interest in dealing with her complaint regarding the denial of a swipe card.[98] While Thai contends that the common interest privilege does not apply because "Boon's statement was uttered with malice"[99] and "reckless disregard for [its] falsity,"[100] her allegations are

---

[97]    *See* FAC ¶ 39.

[98]    The privilege has been routinely applied to communications between employees of an organization. *See Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996); *Liberman*, 80 N.Y.2d at 437. *Cf. Albert*, 239 F.3d at 272 ("Communications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the [common interest] privilege.") (citing *McNaughton v. City of New York*, 650 N.Y.S.2d 688 (1st Dep't 1996) and *Mock v. LaGuardia Hospital-Hip Hosp., Inc.*, 498 N.Y.S.2d 446 (2d Dep't 1986)).

[99]    FAC ¶ 122. Although Thai claims Boon made the statement "for spiteful purposes in response to [her] challenge to his discriminatory policies," this is just a bare assertion not entitled to the presumption of truthfulness.

[100]    *Id.* ¶ 123.

conclusory and unsupported by any factual allegations.[101]  She fails to adequately

plead facts to support the inference that the statement was made maliciously and

for the sole purpose of defaming her.[102]  Thus, Thai's allegations of malice are not

entitled to a presumption of truthfulness and are insufficient to overcome the

common interest privilege.[103]

### 3.    Boon's Statement Was Not Defamatory Per Se

Thai alleges that Boon's statement "contained, or created the

impression of, facts that . . . malign [her] honesty, trustworthiness, dependability,

or professional or business abilities" as a bookkeeper.[104]  The FAC, however,

merely recites the standard for defamation per se, without pleading any facts to

---

[101]    In her Reply Memorandum, Thai claims that Boon was lying when he
stated that only Cayre family members received swipe cards, which implies that
security was not the real concern motivating his statement. *See* Plaintiff's
Memorandum of Law in Opposition to Defendants' Motion for Partial Dismissal
of Plaintiff's Complaint at 19.  Thai's allegations of untruthfulness cannot satisfy
the bad faith exception to the common interest privilege, however, because they do
not support the inference that Boon's statement was uttered for the sole purpose of
defaming her.

[102]    *See Golden*, 720 N.Y.S.2d at 165 (holding that to overcome the
privilege, the plaintiff must show that "the communication was not made in good
faith but was motivated solely by malice.") (citation omitted).

[103]    *See id.* ("Mere conclusory allegations, or charges based upon surmise,
conjecture, and suspicion are insufficient to defeat the claim of qualified
privilege.") (citation omitted).

[104]    FAC ¶ 127.

-24-

support the inference that Boon's statement "'impute[d] incompetence, incapacity or unfitness in the performance of [her] profession.'"[105]   Taken in context and according to their ordinary meaning, the allegedly defamatory words would not tend to injure Thai in her profession,[106] and thus "are not actionable absent a showing of special damages."[107]

### 4.   Thai Failed to Plead Special Damages with Sufficient Particularity

Thai claims that she "suffered emotional and physical injury, and [] incurred actual and special damages" as a result of Boon's allegedly defamatory statement,[108] but she fails to allege these damages with the requisite specificity to survive a motion to dismiss.  Her general demand for an award of $750,000 in

---

[105]   *Allen*, 872 N.Y.S.2d at 1103 (quoting *Clemente v. Impastato*, 711 N.Y.S.2d 71, 74 (3d Dep't 2000)).

[106]   *See Celle*, 209 F.3d at 179-80.

[107]   *Allen*, 872 N.Y.S.2d at 1103 (citations omitted). *Accord Aronson*, 65 N.Y.2d at 594 (affirming dismissal of defamation claim on the ground that the allegedly defamatory statement was, at worst, a "'general reflection upon the plaintiff's character or qualities,' not 'a matter of significance and importance' and not a 'defamation of a kind incompatible with the proper conduct of . . . [her] business.'") (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 112, at 791 (5th ed. 1984)).

[108]   FAC ¶ 124.

damages "for loss of compensation and financial harm"[109] does not come close to

meeting the New York standard for specificity.[110]  Having failed to state a

plausible claim for defamation, dismissal is appropriate pursuant to Rule 12(b)(6)

with respect to Plaintiff's Fifth and Sixth Causes of Action.

### C.    Intentional Infliction of Emotional Distress

Thai's allegations of intentional infliction of emotional distress do not

rise to the level of outrageousness necessary to constitute IIED under New York

law.[111]  What is essentially a discrimination dispute between Thai and her former

employers cannot be transformed into an IIED claim without a specific allegation

that Defendants' conduct that reasonably may be deemed "atrocious,"

"outrageous," or "utterly intolerable," as the law requires.  The IIED "outrageous

conduct" standard is set deliberately high to ensure that a plaintiff's claim of

emotional distress is genuine and to dissuade litigation where only bad manners

---

[109]    *See id.* ¶ 125.

[110]    *See Nunez*, 957 F. Supp. at 441 ( "To satisfy the special damages requirement, a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice.").

[111]    *See Howell,* 81 N.Y.2d at 121 (noting that IIED claims require a showing of "extreme and outrageous" conduct on the part of defendants).

and hurt feelings are involved.[112]  Thai's allegations – that she was humiliated in

front of her co-workers, and that after being fired she was forced to eat her lunch

in the conference room, teach Oliveri the bookkeeping system, and leave her

personal belongings behind[113] – do not satisfy this standard.  Accordingly,

Plaintiff's IIED claim (Count Seven) must be dismissed.

**D.    Retaliation**

Thai claims Defendants fired her in retaliation for complaining about

gender discrimination with respect to the swipe card incident and threatening to

file suit if the "sexual harassment," as Thai called it, did not stop.[114]  Taken as true,

these allegations constitute actionable retaliation under the NYCHRL.  Defendants

object on the basis that Thai could not reasonably have believed that the denial of

a swipe card constituted unlawful discrimination because the Company's conduct

"[did] not constitute an actionable adverse action" under Title VII.[115]  Arguably,

then, Thai's complaining to management was not a protected activity.

Not only do Defendants misconstrue Thai's adverse employment

---

[112]    *See id.*

[113]    *See* FAC ¶¶ 83, 88-89, 91-93.

[114]    *See id.* ¶ 151.

[115]    Def. Mem. at 16.

action claim, as previously discussed, but they also misunderstand the standard for

retaliation under the NYCHRL.  To state a claim for retaliation under the

NYCHRL, it is not necessary for the plaintiff to plead a "material adverse change

in terms or conditions of employment."[116]  Contrary to Defendants' assertions,

Thai's claims are not analyzed under the Title VII framework, but under the

purposely more permissive NYCHRL standard.[117]  This Court must perform an

"independent analysis . . . targeted to understanding and fulfilling . . . the City

HRL's 'uniquely broad and remedial' purposes, which go beyond those of

counterpart State or federal civil rights laws."[118]  Under this more liberal standard,

Thai states a valid claim for retaliation because a jury could conclude that "the acts

complained of" are "reasonably likely to deter a person from engaging in protected

---

[116]   *Williams*, 872 N.Y.S.2d at 34.

[117]   Defendants' reliance on *Gillman v. Inner City Broad. Corp.*, 08 Civ.
8909, 2009 WL 3003244 (S.D.N.Y. Sept. 18, 2009), for the proposition that
retaliation claims under the NYCHRL "depend on the same standards developed
in the Title VII context" is misplaced because the *Gillman* court relied on case law
decided before *Williams*.  Moreover, the plaintiff in *Gillman* pled Title VII,
ADEA, and NYCHRL claims in tandem; Thai's claims are brought only under the
NYCHRL.  As the *Gillman* court itself noted, "Plaintiff's NYCHRL . . . claim does
not necessarily depend on Title VII standards and, in fact, most likely depends on
city-specific standards." 2009 WL 3003244, at *4 n.10 (citing *Williams*, 872
N.Y.S.2d at 31-32).

[118]   *Williams*, 872 N.Y.S.2d at 31.

activity."[119]  Although Defendants claim Thai was not fired in retaliation for

complaining, but rather for insubordination, New York courts have made clear that

the jury is "generally best suited" to determine whether challenged conduct is

retaliatory.[120]

        Even under Title VII, moreover, a plaintiff need not establish that the

complained-of activity constitutes unlawful discrimination.  All that is required is

that the complainant have a "'good faith, reasonable belief that the underlying

employment practice was unlawful'"[121] such that the employer "could reasonably

have understood[] that the plaintiff's opposition was directed at conduct

prohibited by Title VII."[122]  Both verbally and via e-mail, Thai complained of

"sexual harassment,"[123] and even threatened to file a claim if the disparate

treatment did not stop.[124]  Even if she did not use the correct terminology, Thai

---

[119]    *Id.* at 34.

[120]    *Id.*

[121]    *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)).

[122]    *Id.*

[123]    *See* FAC ¶¶ 68, 70.

[124]    *See* Thai E-mail.

clearly was complaining of gender discrimination – there is no way Defendants were unaware of that. Thai's allegation that she was fired for those complaints meets the Title VII protected activity and adverse employment action standards, regardless of whether the denial of the swipe card was truly discriminatory.[125] Because Thai would have an actionable retaliation claim under the more stringent federal standard, her NYCHRL retaliation claim must surely survive a motion to dismiss.[126] Accordingly, Defendants' motion with respect to Plaintiff's Eleventh Cause of Action is denied.

### E.    Leave to Amend Would Be Futile

Typically, a plaintiff is given leave to amend her complaint when a motion to dismiss is granted.[127] Here, however, there is no additional substantive information Thai could offer to cure the deficient pleadings with respect to her

---

[125]    *See Burlington N.*, 548 U.S. at 69-70 ("[T]he standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination.").

[126]    *See Gillman*, 2009 WL 3003244, at *4 n.10 ("[S]ince NYCHRL claims are construed more broadly than Title VII claims . . . so long as a plaintiff has made out federal . . . claims, [s]he has in most cases made out a city claim as well.").

[127]    *See Hayden*, 180 F.3d at 53.

IIED and defamation claims.  Moreover, Thai has already been given the opportunity to amend her Complaint.[128]  Granting her the opportunity to replead now would be futile.[129]  Accordingly, leave to amend is denied.

## V.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted with respect to Plaintiff's Fifth, Sixth, and Seventh Causes of Action, but denied with respect to her Third, Tenth, and Eleventh Causes of Action. Accordingly, Plaintiff's defamation and IIED claims are dismissed, but her discrimination and retaliation claims survive.  The Clerk of Court is directed to close this motion (Document No. 12).  A status conference is scheduled for November 10, 2010, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           July 8, 2010

---

[128]   *See* Def. Mem. at 2 n.2.

[129]   *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## - Appearances -

**For Plaintiff:**

Robert James Basil, Esq.
Collier & Basil, P.C.
1270 Broadway, Suite 305
New York , NY 10001
(917) 512-3066

**For Defendants:**

Matthew A Steinberg, Esq.
Ravindra Kumar Shaw, Esq.
Jackson Lewis LLP
59 Maiden Lane, 39th Floor
New York , NY 10038
(212) 545-4091